30 P.3d 655

**WASHINGTON ELEMENTARY SCHOOL DISTRICT NO. 6 OF MARICOPA COUNTY, a political subdivision of the State of Arizona, Plaintiff–Appellant,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, through Sandra E. Dowling, in her capacity as Maricopa County School Superintendent, Defendant–Appellee.**

No. 1 CA–CV 00–0281.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 30, 2001.

---

Jennings, Strouss & Salmon, P.L.C., by Gary L. Lassen, John J. Egbert, Phoenix, Attorneys for Plaintiff–Appellant.

Sacks Tierney P.A., by Dean M. Wolcott, Scottsdale, Attorneys for Defendant–Appellee.

## OPINION

PORTLEY, Judge Pro Tempore.*

¶ 1 The Washington Elementary School District No. 6 ("Washington Elementary" or "the District") appeals the trial court's refusal to order the Maricopa County School Superintendent ("School Superintendent" or "the County") to prepare an informational report and a sample ballot for a second budget override election in the 2000–2001 fiscal year. Because we agree that *Wilson Elementary School District No. 7 v. Superior Court*, 158 Ariz. 339, 762 P.2d 626 (App.1988) has not been modified by legislative changes to Arizona Revised Statutes Annotated ("A.R.S.") section 15–481 (Supp.2000), we affirm.

### Relevant Facts

¶ 2 Washington Elementary scheduled and lost a budget override election on November 2, 1999. Subsequently, the school board called for another override election on May 16, 2000, hoping to convince its voters to approve the override.

---

* NOTE: The Honorable Maurice Portley, a judge of the Maricopa County Superior Court, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 3.

¶ 3 The School Superintendent declined to prepare the informational report and sample ballot for the second election. She opined that A.R.S. section 15–481 did not authorize more than one budget override election for a single fiscal year.

¶ 4 The District then filed a special action in the Superior Court. While the special action was pending, the District called for a different override election on the same day, May 16, 2000, seeking additional spending authority for special programs to assist low-achieving pupils in kindergarten through grade three. The School Superintendent again declined to prepare or forward pre-election materials.

¶ 5 The District was permitted to amend its special action to challenge that action as well. After conducting an evidentiary hearing, the trial court denied relief. The District then filed a special action in this court, and we declined jurisdiction.

¶ 6 The trial court then entered a formal judgment, which the District timely appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## Discussion

¶ 7 This court has three issues to resolve. First, whether this matter should be dismissed because the issues are moot. Second, whether the post-*Wilson Elementary* legislative amendments to A.R.S. section 15–481 vitiate *Wilson Elementary*'s holding. Finally, whether *Wilson Elementary* applies to A.R.S. section 15–482 budget override elections. This court reviews questions of statutory interpretation *de novo. Open Primary Elections Now v. Bayless,* 193 Ariz. 43, 46, ¶ 9, 969 P.2d 649, 652 (1998).

### I. Mootness

¶ 8 The County suggests that the issues are moot because this appeal cannot impact the 2000–2001 fiscal year. The County recognizes, however, that the issues might resurface if voters reject a budget override election and a school district attempts a second election in the same fiscal year. Because moot issues of great public importance that are likely to recur should be decided, *see*

*Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Board,* 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982), we will consider and resolve these issues.

## II. Override Elections for a Single Fiscal Year

### A. Wilson Elementary

¶ 9 This court held in *Wilson Elementary* that "a [school] district, having lost (or won) an override election, is not entitled to have that school year budget submitted to the voters a second time." 158 Ariz. at 341, 762 P.2d at 628.

¶ 10 In *Wilson Elementary,* after the school district lost the February 9, 1988 election, it attempted to hold another override election on May 17, 1988. The superintendent refused to process the necessary materials to hold the May election. The district sought relief, which was denied by the trial court and this court.

¶ 11 We examined A.R.S. section 15–481, rejected the district's arguments and found that "the statutory scheme is antithetical to holding more than one override election each budget year." 158 Ariz. at 341, 762 P.2d at 628. Specifically, we rejected the argument that because the statute prescribed that an election "shall be held on either the third Tuesday in May or the second Tuesday in February," A.R.S. § 15–481(D), it permitted at least two elections. We stated that "[t]he statute uses the language 'either/or,' which normally denotes the choice of one alternative to another." 158 Ariz. at 340, 762 P.2d at 627. We further found that the statutory scheme

clearly envisions a process in which the voters are not only voting on a proposed budget, but are also given the choice between competing budgets for the coming school year. The voters are told that if the proposed budget is defeated, then the alternate budget for that year "shall be adopted." By defeating the proposed budget, the voters are, in essence, voting for the alternate budget. Allowing the district to present the proposed budget again . . . for that school year, is contrary to the

statutory scheme for adopting school year budgets.

*Id.* at 341, 762 P.2d at 628.

### B. Post-*Wilson Elementary* Amendments to A.R.S. section 15–481

¶ 12 In 1995 and 1996 the Arizona Legislature enacted several amendments to A.R.S. section 15–481. The 1995 amendment revised the closing sentence of section 15–481(A) as follows:

> If the qualified electors approve the proposed budget ~~or if the qualified electors disapprove the proposed budget~~, the governing board of the school district shall follow the procedures ~~as provided~~ *prescribed* in § 15–905 for adopting ~~the proposed budget or alternate budget following the override election~~ *a budget that includes the authorized increase. If the qualified electors disapprove the proposed budget the governing board shall follow the procedures prescribed in § 15–905 for adopting a budget that does not include the proposed increase* . . . .

1995 Ariz. Sess. Laws, ch. 191, § 3. (Strike-outs indicate deletions; underlining indicates additions). At the same time, chapter 191, section 3 deleted from the required ballot language the sentence, "If the proposed budget is disapproved, the alternate budget shall be adopted by the school district governing board." A.R.S. § 15–481(E), (F)(3), (I), (J) (1991).

¶ 13 The 1996 amendments further amended applicable law. First, A.R.S. section 15–481 was amended in part as follows:

> (D) The elections prescribed in subsection A of this section shall be held on ~~either the third Tuesday in May or the second Tuesday in March~~ *a date prescribed by § 16–204* . . . .

1996 Ariz. Sess. Laws, ch. 271, § 13. Second, section 16–204(B) was added, providing in part:

> [A]n election held for or on behalf of a . . . school district . . . may only be held on the following dates:
>
> 1. The second Tuesday in March.
>
> 2. The third Tuesday in May.

3. The eighth Tuesday before the first Tuesday after the first Monday in November . . . .

4. The first Tuesday after the first Monday in November . . . .

1996 Ariz. Sess. Laws, ch. 271, § 16. This section applies not only to school district budget override elections, but to all elections "held for or on behalf of a county, city or town, a school district, a community college district or special districts organized pursuant to title 48. . . ." A.R.S. § 16–204(B) (Supp.2000).

¶ 14 The District argues that the 1995 and 1996 amendments emasculated *Wilson Elementary*. Specifically, the District contends that by removing the "either/or" language and the mandatory override ballot language that the "alternate budget shall be adopted" if the override proposal fails, the Legislature has removed the precise statutory language that this court relied upon to support its holding. Thus, because there is no statutory basis to believe the voters were adopting an "alternate budget," and because elections can now be held on the dates outlined in A.R.S. section 16–204(B), the District can hold multiple override elections in the same fiscal year.

¶ 15 The District's analysis is sound insofar as it demonstrates that the statutory underpinnings of *Wilson Elementary* have been removed. The question remains, however, whether *Wilson Elementary* 's ultimate holding is now incorrect.

### C. Interpretation of A.R.S. sections 15–481 and 15–482

¶ 16 Despite the District's analysis, we are not convinced that *Wilson Elementary* 's holding has been legislatively overruled.

¶ 17 In 1988, A.R.S. section 15–481 clearly supported *Wilson Elementary* 's characterization of a failed override bid. The version of section 15–481(A) in effect at that time provided explicitly that after an override election at which the proposed budget failed, the school board was to adopt "the alternate budget" under the general procedures of section 15–905. Both the county superintendent's pre-election informational report and

the override ballot so informed the voters. A.R.S. § 15–481(B)(10), (E), (F'), (I), (J) (1991).

¶ 18 It is certainly true that after the 1995 amendments A.R.S. section 15–481(U) continued to provide that "the alternate budget . . . shall be adopted by the governing board" if the proposed budget were rejected, and section 15–481(B)(10) still required the superintendent's informational report to so inform the electorate. At the same time, however, amended section 15–481 did not retain the former requirement that the override ballot also convey that information to the voters.

■ ¶ 19 More importantly, A.R.S. section 15–481(A) was amended to provide that in the event the override failed at the polls, "the governing board shall follow the procedures prescribed in § 15–905 for adopting a budget that does not include the proposed increase. . . ." That language makes it clear that, whatever the legal status of the "alternate budget" before section 15–481(A) was amended, it now functions only to illustrate for the voters' benefit the estimated fiscal impact that the "proposed budget" would likely have. *See* A.R.S. § 15–481(B)(11) (Supp.2000). Under these circumstances, we can no longer agree with the *Wilson Elementary* court that by defeating a proposed budget override, a school district's electorate conclusively approves the pre-election "alternate budget."

■ ¶ 20 Nonetheless, based on the overall school district budgeting scheme implicit in A.R.S. sections 15–481 and 15–905, we conclude that *Wilson Elementary* 's ultimate holding remains intact. The District's analysis relies implicitly on the premise that section 15–481 grants school districts discretionary authority to call override elections. That premise is false. Section 15–481 grants no discretionary authority. Instead, it imposes on school districts, through subsection (A), a

mandatory duty to order override elections under a single, well-defined circumstance.[1]

¶ 21 Under A.R.S. section 15–481(A), a district's obligation to order a budget override election arises only if its "proposed budget" exceeds the "aggregate budget limit"[2] for the budget year. Section 15–905 requires each school district to prepare a "proposed budget" each year. Section 15–905(A) provides that every district must prepare its "proposed budget" (1) no later than July 5, or (2) no later than the publication of notice of the public hearing and board meeting. Immediately after the hearing, the board must adopt a budget within all applicable spending limits. *See* A.R.S. § 15–905(E) (Supp.2000). Upon adoption, the budget is no longer a "proposed budget." *See* A.R.S. § 15–905(D), (E).

¶ 22 By July 18 the board must send the newly adopted budget to the county school superintendent, who must in turn send copies to the county board of supervisors and the state superintendent of public instruction. A.R.S. § 15–905(E). The state superintendent then has until October 30 to review the budget and notify the school board if the budget exceeds any applicable limit. *Id.*

¶ 23 If the state superintendent so notifies the school board, the board must adjust its budget informally if it is over limit by less than $1,000, or must hold a public meeting by December 15 to adopt a revised budget within the limits if the overage is $1,000 or more. *Id.* In either event the board must file with the county superintendent a revised, compliant budget on or before December 18. *Id.*

¶ 24 As we have observed, under the budget adoption process that A.R.S. section 15–905 prescribes, a school district's budget is "proposed" only until the governing board "finally adopt[s]" it immediately after a public hearing on or before July 15.[3] A.R.S.

1. The first sentence of section 15–481(A) provides: "If the proposed budget of a school district exceeds the aggregate budget limit for the budget year, the governing board shall order an override election to be held not less than ninety days from the date of the order. . . ."

2. Section 15–905(H) defines the "aggregate budget limit" as the sum of the budget year's general

budget limit, unrestricted capital budget limit, and soft capital allocation limit as determined in A.R.S. section 15–947, together with all federal assistance other than monies received under P.L. 81–874.

3. If the state superintendent of public instruction later notifies the board pursuant to section 15–905(E) that its budget is over limit, the budget

§ 15–905(B), (D), (E). Moreover, neither section 15–905 nor section 15–481 grants to school districts any authority to call budget override elections other than that necessarily implied by the mandatory provisions of section 15–481(A). We must therefore conclude, as did the court in *Wilson Elementary*, that the statutory scheme authorizes only one school district budget override election for any given year, and then only to the extent required by the provisions of section 15–481(A).

¶ 25 The district's reliance on the 1996 amendment of A.R.S. section 15–481(D) concerning permissible override election dates is misplaced. Section 16–204, to which section 15–481(D) refers, does not provide or even suggest that a school district or other affected political subdivision may hold an election on each one of the four specified dates in a given year. The statute's express purpose is to achieve statewide uniformity by prohibiting the holding of otherwise authorized elections on any dates other than the four that it describes. *See* A.R.S. § 16–204(A) (Supp. 2000). The question of whether elections are authorized and how many may be held for a single year must be determined under provisions other than section 16–204. As we have held, section 15–481 authorizes only one budget override election for any given year.

¶ 26 Finally, we consider the District's argument that even if the *Wilson Elementary* holding remains viable, this court should not apply it to elections proposing to override spending limits for the purposes specified in A.R.S. section 15–482. The District points to evidence in the record that Maricopa County permits any school district to hold a budget override election under section 15–482 in the same fiscal year as one pursuant to section 15–481 "as long as the two elections are held on the same day." The District argues:

Override elections pursuant to § 15–481 and § 15–482 have fundamentally different objectives. It is well within the realm of possibilities that voters may be in favor of one, but not the other. Accordingly, permitting the electorate to express its position on these distinct proposals during the same fiscal year—even on different dates—gives voice to the voters' wishes, rather than interfering with them.

*Id.* at 22, 762 P.2d 626. We disagree.

¶ 27 We find no statutory basis for the District's position. Section 15–482 provides limited grounds distinct from those contemplated by section 15–481 for "[a]n additional budget increase ... of up to five per cent of the revenue control limit" aimed at furthering specified narrow purposes. A.R.S. § 15–482(A) (Supp.2000). Section 15–482 does not itself authorize a school board to order a budget override election. A budget increase under section 15–482 must instead be "requested and authorized as provided in § 15–481, subsections I and J...." A.R.S. § 15–482(A). Section 15–481(I) and (J) in turn treat override elections for the purposes outlined in section 15–482 in parallel fashion with all other varieties of override elections detailed in section 15–481. *Compare* subsections (I) and (J) of A.R.S. section 15–481 *with* subsections (E), (F), (L), and (M). All such elections are accordingly governed by the general procedures and limitations imposed by sections 15–481(A) and 15–905(A) through (E).

## Conclusion

¶ 28 Although A.R.S. section 15–481 has been amended, our holding in *Wilson Elementary* remains the law. If the Arizona Legislature chooses to authorize a school district to hold more than one override election during a fiscal year, it can amend section 15–481 to expressly grant that right. Until that occurs, a school district can hold only one

---

cannot be said to revert to mere "proposed" status. Section 15–905 does not refer to a school district's budget as "proposed" at any point beyond its adoption on or before July 15. *See* A.R.S. § 15–905(E)–(R). Moreover, a holding that an adopted budget returned by the state superintendent under section 15–905(E) reverts at that point to "proposed budget" status would

entail a mandatory budget override election under section 15–481(A). This would starkly conflict with the provisions of section 15–905(E) under which the board must adjust its budget based on the state superintendent's over-limit notification and "file the revised budget which it adopts with the county school superintendent" no later than December 18.

budget override election for any purpose during the fiscal year.

¶ 29 The judgment is affirmed.

CONCURRING: NOEL FIDEL, Presiding Judge, and WILLIAM F. GARBARINO, Judge.